UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OWOLEKE O SHONOWO, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:10-cv-1500 |
| | § | |
| TRANSOCEAN OFFSHORE DEEPWATER, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court is the defendant's, Transocean Offshore Deepwater, Inc. ("Transocean"), motion for summary judgment (Dkt. No. 14).  The plaintiff, Owoleke Shonowo (the "plaintiff"), has filed a response in opposition to the motion (Dkt. No. 15) and Transocean has filed a reply (Dkt. No. 16).  Having carefully examined the motion, response, reply, the record and the applicable law, the Court determines that Transocean's motion for summary judgment should be GRANTED.

**II.     FACTUAL BACKGROUND**

The plaintiff commenced the instant action against the defendants, Transocean, Life Insurance Company of North America ("LINA"), and National Employee Benefit Companies, Inc.  ("NEBC") seeking to recover the value of life insurance benefits he contends he would have received under the Transocean U.S. Group Life Insurance Plan (the "Plan") but for a breach of fiduciary duty by Transocean, the former employer of his late wife, Olufunke A. Shonowo

("Mrs. Shonowo" or "late-wife").[1]   Mrs. Shonowo began working as a staff accountant for Transocean in April or May of 2008 and remained in continuous, active employment with it until around February 6, 2009, when she was terminated as part of a reduction-in-force.   During her employment, Mrs. Shonowo participated in the Plan established and maintained by Transocean and insured by LINA.   The plaintiff does not dispute that the Plan qualifies as an "employee welfare benefit plan" governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § § 1001 ("ERISA").[2]

As part of her reduction-in-force packet of information, Mrs. Shonowo was provided with a written Explanation of Benefits on February 6, 2009, by Amber Williams ("Williams") of Transocean's Benefits Department.   The Explanation of Benefits correspondence specifically set forth how her benefits would be handled following her termination.   Particularly, with regard to her life insurance benefits, the Explanation of Benefits correspondence provided as follows:

LIFE INSURANCE

---

[1] Although the plaintiff has sued LINA and NEBC, there is no evidence in the record establishing that service, to date, has been effected on either of these defendants.  The Court, upon having been apprised of the plaintiff's failure to effect service upon the defendants, LINA and NEBC, determines that dismissal of the plaintiff's claims against them is appropriate.  In making this determination, the Court is guided by the record and other admissions on file which demonstrate that despite the duration of suit and having ample notice of the defect in service with regard to these defendants, the plaintiff has not attempted any remedial action to cure the failure of service, has permitted the statutory time period for perfecting service to expire and has failed to proffer any suggestion of good cause for his failure to effect proper service of process.  Pursuant to Fed. R. Civ. P. 4(m), the Court is of the opinion that dismissal of the plaintiff's claims against LINA and NEBC is appropriate.  *See, e.g.*, *Traina v. United States*, 911 F.2d 1155, 1157 (5th Cir. 1990).

[2] ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1)

> Your current life insurance provided by the Company will cease at the end
> of the month following your last day worked.  All voluntary life insurance
> coverage for yourself, your spouse and dependents will cease at the end of
> the month following your last day of employment.  You may be eligible to
> convert the coverage on yourself, your spouse and your dependents to an
> individual policy at your expense, to be issued without medical
> examination by the Insurance Company.  If you are eligible and wish to
> apply for an individual policy you may do so within 31 days of coverage
> ceasing.  Contact the Benefits Department at 713.232.7844, or through e-
> mail at benefits@deepwater.com.

(Dkt. No. 15, Ex. 2).  Williams testified during her deposition that she reviewed Mrs. Shonowo's

benefits options with her at the time of her termination and informed her that she would have to

file her application for individual life insurance coverage directly with LINA.  (Dkt. No. 14, Ex.

B at 15 - 17).

On March 10, 2009, Mrs. Shonowo contacted Stephanie Humphrey of Transocean's

Benefits Department to request another copy of her conversion rights detailed in the Explanation

of Benefits correspondence and Humphrey sent her a copy of the Explanation of Benefits and

application for conversion by e-mail on the same date.  (Dkt. No. 14, Exs. C-1 and C-2.)  On

April 29, 2009, Mrs. Shonowo again contacted Transocean's Benefit Department via telephone

to request another copy of the conversion rights notice and Humphrey e-mailed a copy of the

requested information as well as an application for conversion the same day.  (*Id.*, Exs. C-3 and

C-4).  Thereafter, on April 29, 2009, Mrs. Shonowo completed the conversion application and

forwarded it, along with a check in the amount if $641.05, to LINA.  On May 18, 2009, NEBC, a

third-party administrator for LINA, sent a letter to the plaintiff returning her application for

conversion and check and further advising her that since her application was received on May 5,

2009, it was not received within the eligibility period and could not be accepted.  (Dkt. No. 15,

Ex. 1).

On May 20, 2009, Mrs. Shonowo died of metastatic cancer.  Consequently, after the conversion application was denied, on March 23, 2010, the plaintiff, as beneficiary, instituted the instant action against Transocean, in the 151st Judicial District Court of Harris County, Texas, identified as Cause No. 2010-18553 (the "state court action"), alleging claims for breach of contract, fraud and misrepresentation, negligence, promissory estoppel and exemplary damages. On April 30 2010, Transocean timely removed the state court action to this Court asserting that the plaintiff's state law claims are preempted by ERISA and are claims over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  On June 30, 2010, the plaintiff filed an amended complaint adding LINA and NEBC as defendants and asserting claims for breach of fiduciary duty, promissory estoppel, equitable estoppel, attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

Transocean now moves for summary judgment on the plaintiff's claims.

## III.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

**B. Standard Governing Preemption Under ERISA**

"It is well settled that ERISA generally preempts state law." *Rivers v. Cent. & S.W. Corp.*, 186 F.3d 681, 683 (5th Cir. 1999) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). Because ERISA's purpose is to provide a regulatory scheme for the governance of employee benefit plans it "includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation [is] 'exclusively a federal concern.[3]'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Specifically, Section 514(a) of ERISA mandates that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here). "Because of the breadth of the preemption clause and the broad

---

[3] There are two types of preemption applicable under ERISA: complete and conflict or express preemption. *See Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002). "Complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a)." *Id.* It includes "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" contained in § 502 and creates a basis for removal to federal court. *Davila*, 542 U.S. at 209. Conflict or "express preemption exists when a state law or claim 'relates to' ERISA plans unless it 'regulates insurance' under § 514(a)." *Haynes*, 313 F.3d at 334 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987)).

remedial purpose of ERISA", not many state laws have been found to be beyond § 1144(a)'s scope. *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989).

The Fifth Circuit has generally found ERISA to preempt state law claims in situations: "where (1) 'the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and [when] (2) the claim directly affects the relationship among traditional ERISA entities – i .e., the employer, plan administrators, fiduciaries, participants, and beneficiaries.'" *Bullock v. The Equitable Life Assurance Soc'y of U.S.*, 259 F.3d 395, 399 (5th Cir. 2001); *see also McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 2000) (citing *Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 611 (5th Cir. 1999). A suit by a participant or beneficiary to recover benefits from a covered plan falls directly within the civil enforcement provisions of ERISA, which provides an exclusive federal cause of action for the resolution of such disputes. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 - 63 (1987) (citing *Pilot Life Ins. Co.*, 481 U.S. at 56)). More recently, the Supreme Court, in Davila, held that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)4, and . . . there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210 (citing *Metro. Life*, 481 U.S. at 66) (reasoning that claims seeking "to rectify a wrongful denial of benefits promised under ERISA-regulated plans" and which "do not attempt to remedy any violation of a legal duty independent of ERISA" to be completely preempted). The Court, in *Davila*, also held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the

---

[4] Section 502(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

## IV.    ANALYSIS AND DISCUSSION

### A.    Preemption Under ERISA

In the case *sub judice*, Transocean argues that the plaintiff's state law claims against it are internally inconsistent and are preempted by ERISA.  The plaintiff concedes that his claims are preempted by ERISA and that ERISA vests this Court with jurisdiction to hear the instant dispute.  (*See* Dkt. No. 15, ¶ 3.)  Additionally, a review of the plaintiff's First Amended Complaint makes it readily apparent that his sole purpose in commencing this action is to recover the equivalent of life insurance benefits that would have been available to him as beneficiary under his late-wife's group life insurance policy, had the group policy been timely converted to an individual policy prior to her death.  (*See* Dkt No. 10).  Thus, this action falls squarely within ERISA's civil enforcement provisions as it not only involves claims which address an area of exclusive federal concern--such as the right to receive benefits under the terms of an ERISA plan or pursuant to an alternate enforcement mechanism--but includes claims that directly affect the relationship between traditional ERISA entities such as the relationship among an administrator, fiduciary and plan beneficiary.  Further, "[t]he right to convert is a part of a plan and governed by ERISA.  *Strohmeyer v. Metro. Life Ins. Co.*, 365 F.Supp.2d 258, 260 (D. Conn. 2005) (citing *Howard v. Gleason Corp.*, 901 F.2d 1154, 1158 (2d Cir. 1990).  Because the plaintiff's state law claims concern duties owed under an ERISA-regulated plan and Transocean's liability, if any, is dependent upon the existence and interpretation of the ERISA-regulated employee benefits plan, they are completely preempted by ERISA.  *See Davila*, 542 U.S. at 210 (citing *Metro. Life*, 481 U.S. at 66) (reasoning that employee's common law tort and

contract claims stemming from an insurer's alleged improper termination of benefits under an ERISA-regulated plan to be completely preempted); *see also Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1290 – 91 (5th Cir. 1988) (reasoning that ERISA preempts common law claims for "breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud.")

### B.      The Plaintiff's Breach of Fiduciary Duty Claim Under ERISA

As a threshold matter, the plaintiff principally argues that Transocean breached its fiduciary duties in violation of ERISA § 502(a)(3) by failing to provide his late-wife with adequate notice of her right to convert her group life insurance policy to an individual life insurance policy upon her termination and by causing her application for conversion to be rejected as untimely filed by LINA.  Consequently, he avers that Transocean: (1) should not be permitted to benefit from its failure to properly notify his late-wife of the 31-day conversion period applicable to her application for conversion; (2) should be estopped from denying her conversion application as untimely filed; (3) should be ordered to immediately reinstate all applicable benefits according to the terms of the Plan; and (4) should be further ordered to pay him, as beneficiary, the full value of his late-wife's life insurance policy as though her application for conversion had been timely filed and her group policy converted to individual coverage.

Transocean, in opposition, contends that the plaintiff's allegations are legally insufficient to support a cause of action against it because it had no contractual obligation or fiduciary duty to compel the plaintiff's late-wife to convert her group life insurance policy to an individual policy or to otherwise shepherd her through the application process.  It argues that it provided her with clear and accurate oral and written instructions on her conversion rights and obligations

on February 6, 2009, the day of her termination.  It further contends that it again provided her with written instructions and a conversion application on March 10, 2009 and on April 29, 2009. It maintains that its informational disclosures to the plaintiff's late-wife in this regard constituted ministerial duties under ERISA and are non-fiduciary in nature.  Finally, it avers that the relief requested by the plaintiff here is not equitable in nature but rather is akin to the legal remedy of extra-contractual or contractual damages and has been foreclosed by Fifth Circuit precedent.

Section 502(a)(3) of ERISA permits a plan participant or beneficiary to institute a civil action:  "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3) (emphasis added).  It is well-settled law that relief under section 502(a)(3) is restricted to "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998).  Such "appropriate equitable relief," however, "does not include recovery in the form of payment of benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty."  *Khan v. Am. Int'l Grp., Inc.*, 654 F. Supp.2d 617, 626 (S.D. Tex. 2009) (citing *Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 & n.7 (5th Cir. 2007), *cert. denied*, ---U.S. ---, 128 S. Ct. 2995, 171 L. Ed.2d 911 (2008).  Rather, in order for a plaintiff to recover for "appropriate equitable relief" under section 502(a)(3), he "must establish that the defendant is (a) a plan fiduciary, (b) has breached its fiduciary duties under ERISA, (c) that such a breach caused the plaintiff's injury, and (d) that the equitable relief sought is indeed appropriate."  *Hobbs v. Baker Hughes Oilfield Operations*, Civil

Action No. V-06-97, 2007 WL 4223666, at * 5 (S.D. Tex. Nov. 28, 2007) (citing *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) (other citations omitted)).

Moreover, under ERISA, a fiduciary is obligated to "act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute." *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 307 (5th Cir. 2007). "These duties under the statute include, 'the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Langbecker*, 476 F.3d 307 n.13 (quoting 29 U.S.C. § 1104(a)(1)(B)). To this end, a fiduciary is required to discharge its duties "solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

Here, the plaintiff maintains that Transocean breached its fiduciary duties because it failed to comply in good faith with ERISA's regulations regarding the proper administration of his late-wife's benefits by failing to provide his late-wife with adequate notice of her right to convert her group life insurance policy to individual life insurance coverage upon her termination. Nevertheless, the evidence in the record demonstrates that Transocean provided the plaintiff's late-wife with oral and written notice of her conversion rights on February 6, 2009, her final day of employment, and again on March 10, 2009 and April 29, 2009. Specifically, the Explanation of Benefits correspondence provided to Mrs. Shonowo on her last day of employment with Transocean stated, in relevant part, as follows:

> **DATE**:        February 6, 2009
>
> **TO**:        Olufunke Ann Shonowo
>
> Your employment with Transocean Offshore Deepwater Drilling, Inc. will cease 6-Feb-2009.

Your benefits will be handled as follows:

. . .

LILE INSURANCE

> Your current life insurance provided by the Company will cease at the end
> of the month following your last day worked.  All voluntary life insurance
> coverage for yourself, your spouse and dependents will cease at the end of
> the month following your last day of employment.  You may be eligible to
> convert the coverage on yourself, your spouse and your dependents to an
> individual policy at your expense, to be issued without medical
> examination by the Insurance Company.  If you are eligible and wish to
> apply for an individual policy you may do so within 31 days of coverage
> ceasing.  Contact the Benefits Department at 713.232.7844, or through e-
> mail at benefits@deepwater.com.

. . .

(Dkt. No. 15, Ex. 2).

By providing Mrs. Shonowo with the Explanation of Benefits correspondence on her last
day of employment, Transocean put her on notice of the opportunity to convert her group
insurance policies to individual coverage and made a good faith effort to notify her of the
conversion rights applicable to her group insurance policies.  Moreover, no evidence has been
presented by the plaintiff establishing that Transocean:  (1) committed any ministerial errors in
its disclosures to Mrs. Shonowo; (2) made any deceptive statements to Mrs. Shonowo; (3)
deliberately misled Mrs. Shonowo in her efforts to learn how and when to complete the
application for conversion; or (4) otherwise engaged in any misconduct toward Mrs. Shonowo.
Further, as support for his claim of breach of fiduciary duty against Transocean, the plaintiff
merely relies on conculsory allegations and supposition.   Such unsubstantiated assertions,
without more, do not constitute competent summary judgment evidence.  *Forsyth v. Barr*, 19
F.3d 1527, 1533 (5th Cir. 1994).

Although the plaintiff argues that Transocean, particularly Williams, knew of his late-wife's cancer diagnosis and should have taken her directly to the benefits department to ensure that she obtained and timely completed the application for conversion on her last day of employment, this Court is unaware of any provision under ERISA that requires an employer to personally marshal an employee through the application process when there is knowledge of an employee's illness.  Therefore, the Court is convinced that the actions complained of by the plaintiff do not give rise to a breach of fiduciary duty under ERISA because the plaintiff has presented "no allegations . . . of deceptive practices, misrepresentations, or other behavior typically associated with fiduciary breaches by employers under ERISA, as required by *Varity v. Howe*."  *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 252 (5th Cir. 2003); *see also Brosted v. Unum Life Ins. Co. of Am.,* 421 F.3d 459, 466 (7th Cir. 2005) (noting that an ERISA breach of fiduciary duty claim requires "an intent to deceive"); *Vallone v. CNA Fin. Corp.,* 375 F.3d 623, 642 (7th Cir. 2004) (observing that "while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable").  Nor does relief under section 503(a)(3) permit recovery in the form of payment sought by the plaintiff.  *Amschwand*, 505 F.3d at 348 (reasoning that "[o]btaining the lost policy proceeds . . . is simply a form of make-whole damages."  "This demand is not equitable in derivation, but is akin to the legal remedies of extracontractual or compensatory damages.") (internal citations omitted).

C.     **The Plaintiff's ERISA-Estoppel Claim**

Lastly, the plaintiff appears to insinuate that Transocean's alleged breach of fiduciary duty is actionable on an ERISA-estoppel theory.  To prevail on an ERISA-estoppel claim under federal common law, a plaintiff is required to prove:  "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary

circumstances." *Nichols v. Alcatel*, 532 F.3d 364, 374 (5th Cir. 2008) (citing *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 – 45 (5th Cir. 2005)).  With respect to an ERISA-estoppel claim, "there can be no 'reasonable reliance on informal documents in the face of unambiguous Plan terms.'" *Nichols*, 532 F.3d at 374 (citing *Mello*, 431 F.3d at 447) (other citation omitted).  As previously set forth, the plaintiff argues that Transocean had a fiduciary duty to provide adequate notice of applicable conversion rights to his late-wife and breached its duty by failing to comply in good faith with ERISA's regulations regarding the proper administration of her benefits.  He further contends that the fact that Transocean sent the application for conversion to his late-wife on April 29, 2009, and she returned it completed and executed on the same day, demonstrates a reasonable and detrimental reliance.  (Dkt. No. 15 at 6, ¶ 15).  This Court disagrees.

To date, the plaintiff has offered no evidence, beyond mere speculation, sufficient to satisfy any of the aforementioned elements set forth above.  First, he has presented no evidence of any material misrepresentation made by or attributable to Transocean.  Second, assuming *arguendo*, that a material misrepresentation had been established, the plaintiff has failed to establish reasonable and detrimental reliance on any such misrepresentation, especially in light of the unambiguous language contained in the Explanation of Benefits correspondence provided to his late-wife at the time of her termination and again on March 10, 2009.  *See High v. E-Systems, Inc.*, 459 F.3d 573, 580 (5th Cir. 2006) (quoting *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998) (reasoning "that a 'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'")).  Indeed, the language contained in the Explanation of Benefits correspondence provided to Mrs. Shonowo clearly sets forth all the essential information attendant to Mrs. Shonowo's conversion rights, including:   (1) notice of her last date of

employment; (2) notice that her current life insurance provided by Transocean would cease at the end of the month following her last day of employment; (3) notice that all voluntary life insurance coverage would cease at the end of the month following her last day of employment; (4) notice that she may be eligible to convert her group coverage to an individual policy at her expense; and (5) notice that all applications for individual policy conversion must be filed and/or submitted within the 31-day eligibility period.  (Dkt. No. 15, Ex. 2).  The plaintiff, in opposition, does not dispute that Transocean provided his-late wife with this information on her last day of employment, but rather takes issue with the fact that the information provided to her did not specifically set forth the latest date by which Mrs. Shonowo could timely file her application for conversion.  (Dkt. No. 15 at 4.)  Unfortunately, such exactness or specificity is not mandated by ERISA's content and disclosure requirements and Transocean's failure to provide such is insufficient to create a fact issue on the plaintiff's ERISA-estoppel claim.  *See* 29 U.S.C. § 1022.

Finally, the plaintiff has adduced no evidence of the type of "extraordinary circumstances" sufficient to support an ERISA-estoppel claim.  *See High v. E-Systems, Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006); *see also Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d. Cir. 2003) (quoting *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1011 (3d. Cir. 1997) (noting that "'extraordinary circumstances,' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.")).  Consequently, the Court concludes that Transocean is entitled to judgment as a matter of law on the plaintiff's ERISA-estoppel claim.

V.      **CONCLUSION**

Based on the foregoing analysis and discussion, Transocean's motion for summary

judgment is GRANTED.

It is so **ORDERED**.

SIGNED at Houston, Texas this 3rd day of August, 2011.

_____
Kenneth M. Hoyt
United States District Judge